Justice Souter
announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II-A, and III, and an opinion with respect to Parts II-B and II-C, in which The Chief Justice, Justice White, and Justice Stevens join.
The provisions of the Juvenile Delinquency Act require the length of official detention in certain circumstances to be limited to “the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult.” 18 U. S. C. § 5037(c)(1)(B). We.hold that this limitation refers to the maximum sentence that could be imposed if the juvenile were being sentenced after application of the United States Sentencing Guidelines.
1 — 1
Early m the morning of November 5, 1989, after a night of drinking, the then-16-year-old respondent R. L. C. and another juvenile stole a car with which they struck another automobile, fatally injuring one of its passengers, 2-year-old La Tesha Mountain. R. L. C. is a member of the Red Lake Band of Chippewa Indians, and these events took place on the Red Lake Indian Reservation, which is within Indian *295 country as defined by federal law. These circumstances provide federal jurisdiction in this case. See 18 U. S. C. §§ 1151, 1162, 1153. Upon certifying that a proceeding was authorized in federal court under § 5082 on the ground that no state court had jurisdiction over the offense, the Government charged R. L. C. with an act of juvenile delinquency.
After a bench trial, the District Court found R. L. C. to be a juvenile who had driven a car recklessly while intoxicated and without the owner’s authorization, causing Mountain’s death. R. L. C. was held to have committed an act of juvenile delinquency within the meaning of § 5031, since his acts would have been the crime of involuntary manslaughter in violation of §§ 1112(a) and 1153 if committed by an adult. The maximum sentence for involuntary manslaughter under 18 U. S. C. § 1112(b) is three years. At R. L. C.’s disposi-tional hearing, the District Court granted the Government’s request to impose the maximum penalty for respondent’s delinquency and accordingly committed him to official detention for three years.
Despite the manslaughter statute’s provision for an adult sentence of that length, the United States Court of Appeals for the' Eighth Circuit vacated R. L. C.’s sentence and remanded for resentencing, after concluding that 36 months exceeded the cap imposed by § 5037(c)(1)(B) upon the period of detention to which a juvenile delinquent may be sentenced. 915 F. 2d 320 (1990). Although the statute merely provides that juvenile detention may not extend beyond “the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult,”[1] the *296 Court of Appeals read this language to bar a juvenile term longer than the sentence a court could have imposed on a similarly situated adult after applying the United States Sentencing Guidelines. Under the Guidelines, involuntary manslaughter caused by recklessness has a base offense level of 14. United States Sentencing Commission, Guidelines Manual § 2A1.4(a)(2) (Nov. 1991). The court found, and the Government agrees, see Brief for United States 22, n. 5, that because R. L. C. had the lowest possible criminal history level, Category I, the Guidelines would yield a sentencing range of 15-21 months for a similarly situated adult. The Court of Appeals therefore concluded that the maximum period of detention to which R. L. C. could be sentenced was 21 months.
The Government sought no stay of mandate from the Court of Appeals, and on remand the District Court imposed detention for 18 months. Although R. L. C. has now served this time, his failure to complete the 3-year detention originally imposed and the possibility that the remainder of it could be imposed saves the case from mootness. See United States v. Villamonte-Marquez, 462 U. S. 579, 581, n. 2 (1983). We granted the Government’s petition for certiorari, 501 U. S. 1230 (1991), to resolve the conflict between the Eighth Circuit’s holding in this case and the Ninth Circuit’s position, adopted in United States v. Marco L., 868 F. 2d 1121, *297 cert. denied, 493 U. S. 956 (1989), and endorsed by the Government.
II
A
The Government suggests a straightforward enquiry into plain meaning to explain what is “authorized.” It argues that the word “authorized” must mean the maximum term of imprisonment provided for by the statute defining the offense, since only Congress can “authorize” a term of imprisonment in punishment for a crime. As against the position that the Sentencing Guidelines now circumscribe a trial court’s authority, the Government insists that our concern must be with the affirmative authority for imposing a sentence, which necessarily stems from statutory law. It maintains that in any event the Sentencing Commission’s congressional authorization to establish sentencing guidelines does not create affirmative authority to set punishments for crime, and that the Guidelines do not purport to authorize the punishments to which they relate.
But this is too easy. The answer to any suggestion that the statutory character of a specific penalty provision gives it primacy over administrative sentencing guidelines is that the mandate to apply the Guidelines is itself statutory. See 18 U. S. C. § 3553(b). More significantly, the Government’s argument that “authorization” refers only to what is affirmatively provided by penal statutes, without reference to the Sentencing Guidelines to be applied under statutory mandate, seems to us to beg the question. Of course it is true that no penalty would be “authorized” without a statute providing specifically for the penal consequences of defined criminal activity. The question, however, is whether Congress intended the courts to treat the upper limit of such a penalty as “authorized” even when proper application of a statutorily mandated Guideline in an adult case would bar imposition up to the limit, and an unwarranted upward de *298 parture from the proper Guideline range would be reversible error. § 3742. Here it suffices to say that the Government’s construction is by no means plain. The text is at least equally consistent with treating “authorized” to refer to the result of applying all statutes with a required bearing on the sentencing decision, including not only those that empower the court to sentence but those that limit the legitimacy of its exercise of that power. This, indeed, is arguably the more natural construction.
Plain-meaning analysis does not, then, provide the Government with a favorable answer. The most that can be said from examining the text in its present form is that the Government may claim its preferred construction to be one possible resolution of statutory ambiguity.
B
On the assumption that ambiguity exists, we turn to examine the textual evolution of the limitation in question and the legislative history that may explain or elucidate it.[2] The *299 predecessor of § 5037(c) as included in the Juvenile Justice and Delinquency Prevention Act of 1974 provided that a juvenile adjudged delinquent could be committed to the custody of the Attorney General for a period “not [to] extend beyond the juvenile’s twenty-first birthday or the maximum term which could have been imposed on an adult convicted of the same offense, whichever is sooner.” 18 U. S. C. § 5037(b) (1982 ed.) (emphasis added). In its current form, the statute refers to the “maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult.” 18 U. S. C. § 5037(c) (emphasis added). On its face, the current language suggests a change in reference from abstract consideration of the penalty permitted in punishment of the adult offense, to a focused en-quiry into the maximum that would be available in the circumstances of the particular juvenile before the court. The intervening history supports this reading.
With the Sentencing Reform Act of 1984 (chapter II of the Comprehensive Crime Control Act of 1984, Pub. L. 98-473, § 214(a), 98 Stat. 2013), §5037 was rewritten. As § 5037(c)(1)(B), its relevant provision became “the maximum term of imprisonment that would be authorized by section 3581(b) if the juvenile had been tried and convicted as an adult.” 18 U.S.C. §§ 5037(c)(1)(B), (c)(2)(B)(ii) (1982 ed., Supp. II) (emphasis added). The emphasized language was quickly deleted, however, by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, § 21(a)(2), 100 Stat. 3596 (Technical Amendments Act), resulting in the present statutory text, “the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult.” It thus lost the reference to § 3581(b), which would have guided the sentencing court in identifying the “authorized” term of imprisonment.
*300 R. L. C. argues that this loss is highly significant. Section 3581(b)[3] was, and still is, part of a classification system adopted in 1984 for use in setting the incidents of punishment for federal offenses by reference to letter grades reflecting their relative seriousness. One provision, for example, sets the maximum period of supervised release for each letter grade. §3583. Section 3581(b) sets out the maximum term of imprisonment for each letter grade, providing, for instance, that the authorized term of imprisonment for a class C felony is not more than 12 years, for a class D not more than 6, and for a class E not more than 3.
The deletion of the reference to § 3581(b) with its specific catalog of statutory máximums would seem to go against the Government’s position. Since, for example, a juvenile who had committed what would have been an adult class E felony would apparently have been subject to three years of detention, because § 3581(b) “authorized” up to three years of imprisonment for an adult, the deletion of the reference to § 3581(b) would appear to indicate some congressional intent to broaden the range of enquiry when determining what was authorized.[4]
The Government, however, finds a different purpose, disclosed in the section-by-section analysis prepared by the De *301 partment of Justice to accompany the bill that became the Technical Amendments Act. The Department’s analysis included this explanation for the proposal to delete the reference to § 3581(b): “Because of the effect of 18 U. S. C. § 3559(b)(2), deleting the reference to 18 U. S. C. § 3581(b) will tie the maximum sentences for juveniles to the maximum for adults, rather than making juvenile sentences more severe than adult sentences.” 131 Cong. Rec. 14177 (1985). Congress had enacted § 3559 to reconcile the new sentencing schedule, providing for the incidents of conviction according to the offense’s assigned letter grade, with the pre-existing body of federal criminal statutes, which of course included no assignments of letter grades to the particular offenses they created. Section 3559(a) provides a formula for assigning the missing letter based on the maximum term of imprisonment set by the statute creating the offense. Thus, as it stood at the time of the Technical Amendments Act, it read:
“(a) Classification
“An offense that is not specifically classified by a letter grade in the section defining it, is classified—
“(1) if the maximum term of imprisonment authorized is—
“(A) life imprisonment, or if the maximum penalty is death, as a Class A felony;
“(B) twenty years or more, as a Class B felony;
“(C) less than twenty years but ten or more years, as a Class C felony;
“(D) less than ten years but five or more years, as a Class D felony;
“(E) less than five years but more than one year, as a Class E felony;
“(F) one year or less but more than six months, as a Class A misdemeanor;
“(G) six months or less but more than thirty days, as a Class B misdemeanor;
*302 “(H) thirty days or less but more than five days, as a Class C misdemeanor; or
“(I) five days or less, or if no imprisonment is authorized, as an infraction.
“(b) Effect of classification
“An offense classified under subsection (a) carries all the incidents assigned to the applicable letter designation except that:
“(1) the maximum fine that may be imposed is the fine authorized by the statute describing the offense, or by this chapter, whichever is the greater; and
“(2) the maximum term of imprisonment is the term authorized by the statute describing the offense.” 18 U. S. C. §3559 (1982 ed., Supp. II).
The Government explains that limiting the length of a juvenile detention to that authorized for an adult under § 3581(b) could in some circumstances have appeared to authorize a longer sentence than an adult could have received, when the offense involved was assigned no letter grade in its defining statute. Thus an offense created without letter grade and carrying a maximum term of two years would be treated under § 3559(a) as a class E felony. Section 3581(b) provides that a class E felony carried a maximum of three years. Regardless of that classification, §3559(b)(2) would certainly preclude sentencing any adult offender to more than two years. Tension would arise, however, where a juvenile had committed the act constituting the offense. Insofar as § 5037(c) capped the juvenile detention by reference to what was authorized for an adult, the maximum would have been two years; but insofar as it capped it by reference to what was authorized by § 3581(b), the limit might have appeared to be three. It was to break this tension, according to the Government, that the reference to § 3581(b) was deleted guaranteeing that no juvenile would be given detention longer than the maximum adult sentence authorized by the *303 statute creating the offense. The amendment also, the Government says, left the law clear in its reference to the statute creating the offense as the measure of an “authorized” sentence. This conclusion is said to be confirmed by a statement in the House Report that the amendment “delet[es an] incorrect cross-referenc[e],” H. R. Rep. No. 99-797, p. 21 (1986), which, the Government argues, “suggests that no substantive change was intended.” Brief for United States 20, n. 4.
We agree with the Government’s argument up to a point. A sentencing court could certainly have been confused by the reference to § 3581(b). A sentencing judge considering a juvenile defendant charged with an offense bearing no letter classification, and told to look for “the maximum term of imprisonment that would be authorized [according to letter grade] by section 3581(b),” would have turned first to § 3559(a) to obtain a letter classification. The court perhaps would have felt obliged to ignore the provision of § 3559(b) that “the maximum term of imprisonment is the term authorized by the statute describing the offense” in favor of a longer term provided for by the appropriate letter grade in § 3581(b). Indeed, the sentencing judge would have been faced with this puzzle in virtually every case, since the system of classifying by letter grades adopted in 1984 was only to be used in future legislation defining federal criminal offenses. See Brief for United States 16. No federal offense on the books at the time the Sentencing Reform Act of 1984 was adopted carried a letter grade in its defining statute, and Congress has used the device only rarely in the ensuing years.
Thus, while it included a reference to § 3581(b), § 5037(c) was ambiguous. This ambiguity was resolved by an amendment that, absent promulgation of the Guidelines, might have left the question of the “authorized” maximum term of imprisonment to be determined only by reference to the penalty provided by the statute creating the offense, whether *304 expressed as a term of years or simply by reference to letter grade. The legislative history does not prove, however, that Congress intended “authorized” to refer solely to the statute defining the offense despite the enactment of a statute requiring application of the Sentencing Guidelines, a provision that will generally provide a ceiling more favorable to the juvenile than that contained in the offense-defining statute.
Indeed, the contrary intent would seem the better inference. The Justice Department analysis of the Criminal Law and Procedure Technical Amendments Act of 1986, upon which the Government relies, went on to say that “deleting the reference to 18 U. S. C. § 3581(b) will tie the maximum sentences for juveniles to the maximum for adults, rather than making juvenile sentences more severe than adult sentences.” 131 Cong. Rec. 14177 (1985). This is an expression of purpose that today can be achieved only by reading “authorized” to refer to the maximum period of imprisonment that may be imposed consistently with 18 U. S. C. § 3553(b). That statute provides that “[t]he court shall impose a sentence . . . within the range” established for the category of offense as set forth in the Guidelines, “unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.” § 3553(b).
The point is reinforced by other elements of the legislative history. The Senate Report accompanying the 1986 Technical Amendments Act states that the amendment “makes clear that juvenile sentences are to be of equal length as those for adult offenders committing the same crime.” S. Rep. No. 99-278, p. 3 (1986). This, in turn, reflects the statement in the Senate Report accompanying the Sentencing Reform Act, that the changes in juvenile sentencing law were included “in order to conform it to the changes made in adult sentencing laws.” S. Rep. No. 98-225, p. 155 (1983). *305 The most fundamental of the Sentencing Reform Act’s changes was, of course, the creation of the Sentencing Commission, authorized to promulgate the guidelines required for use by sentencing courts. It hardly seems likely that Congress adopted the current § 5037(c) with a purpose to conform juvenile and adult maximum sentences without intending the recently authorized Guidelines scheme to be considered for that purpose. The legislative history thus reinforces our initial conclusion that § 5037 is better understood to refer to the maximum sentence permitted under the statute requiring application of the Guidelines.[5]
C
We do not think any ambiguity survives. If any did, however, we would choose the construction yielding the shorter sentence by resting on the venerable rule of lenity, see, e. g., United States v. Bass, 404 U. S. 336, 347-348 (1971), rooted in “ ‘the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should,’ ” id., at 348 (quoting H. Friendly, Benchmarks 209 (1967)). While the rule has been applied not only to resolve issues about the substantive scope of criminal statutes, but to answer questions about the severity of sentencing, see Bifulco v. United States, 447 U. S. 381, 387 (1980), its application is unnecessary in this case, since “we have always reserved lenity for those situations in which a reasonable doubt persists about a statute’s intended scope even after resort to ‘the language and structure, legislative history, and motivating policies’ of the *306 statute.” Moskal v. United States, 498 U. S. 103, 108 (1990) (citation omitted).[6]
Ill
We hold, therefore, that application of the language in § 5037(c)(1)(B) permitting detention for a period not to exceed “the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult” refers to the maximum length of sentence to which a similarly situated adult would be subject if convicted of the adult counterpart of the offense and sentenced under the statute requiring application of the Guidelines, § 3553(b). Although determining the maximum permissible sentence under § 5037(c)(1)(B) will therefore require sentencing and reviewing courts to determine an appropriate Guideline range in juvenile-delinquency proceedings, we emphasize *307 that it does not require plenary application of the Guidelines to juvenile delinquents.[7] Where that statutory provision applies, a sentencing court’s concern with the Guidelines goes solely to the upper limit of the proper Guideline range as setting the maximum term for which a juvenile may be committed to official detention, absent circumstances that would warrant departure under § 3553(b).
The judgment of the Court of Appeals is

Affirmed.

 Title 18 U. S. C. §5037(c) provides:.
“(c) The term for which official detention may be ordered for a juvenile found to be a juvenile delinquent may not extend'—
“(1) in the case of a juvenile who is less than eighteen years old, beyond the lesser of—
*296 “(A) the date when the juvenile becomes twenty-one years old; or
“(B) the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult; or
“(2) in the case of a juvenile who is between eighteen and twenty-one years old—
“(A) who if convicted as an adult would be convicted of a Class A, B, or C felony, beyond five years; or
“(B) in any other case beyond the lesser of—
“(i) three years; or
“(ii) the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult.”

 R. L. C. argues that the broader statutory purpose supports his position. He contends that longer juvenile sentences are only justified by a rehabilitative purpose. See, e. g., Carter v. United States, 113 U. S. App. D. C. 123, 125, 306 F. 2d 283, 285 (1962) (imposing a longer juvenile sentence under the now-repealed Youth Corrections Act) (“[Rjehabilitation may be regarded as comprising the quid pro quo for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison”). He then suggests that the Sentencing Reform Act rejected the rehabilitative model not merely for adult imprisonment, see Mistretta v. United States, 488 U. S. 361, 366-367 (1989), but for juveniles as well. See Brief for Respondent 19. While it is true that some rehabilitative tools were removed from the juvenile penalty scheme in 1984, see Pub. L. 98-473, § 214(b), 98 Stat. 2014 (abolishing parole for juvenile delinquents), the Juvenile Delinquency Act does not completely reject rehabilitative objectives. See, e. g., 18 U. S. C. §§5035, 5039. We do not think a broader congressional purpose points clearly in either party’s direction.

 “(b) Authorized terms. — The authorized terms of imprisonment are—
“(1) for a Class A felony, the duration of the defendant’s life or any period of time;
“(2) for a Class B felony, not more than twenty-five years;
“(3) for a Class C felony, not more than twelve years;
“(4) for a Class D felony, not more than six years;
“(5) for a Class E felony, not more than three years;
“(6) for a Class A misdemeanor, not more than one year;
“(7) for a Class B misdemeanor, not more than six months;
“(8) for a Class C misdemeanor, not more than thirty days; and
“(9) for an infraction, not more than five days.” 18 U. S. C. § 3581.

 We speak here of an indication appearing solely from the face of the text. In fact, so far as we can tell, at the time of the amendment no federal statute defining an offense referred to it by letter grade.

 The dissent takes us to task for reliance upon a “technical amendment.” But a statute is a statute, whatever its label. Although the critical congressional enactment, the deletion of the reference to § 3681(b), came in the Technical Amendments Act, we have applied the usual tools of statutory construction: the language left in the statute after its amendment in 1986 is most naturally read to refer to the term of imprisonment authorized after application of the statute mandating use of the Guidelines. The legislative history of the Technical Amendments Act reinforces this conclusion.

 Justice Scalia questions the soundness of Moskal’s statement that we have reserved lenity for those cases (unlike this one) in which after examining “the ... structure, legislative history, and motivating policies,” in addition to the text of an ambiguous criminal statute, we are still left with a reasonable doubt about the intended scope of the statute’s application. But the Court has not in the past approached the use of lenity in the way Justice Scalia would have it.
It is true that the need for fair warning will make it “rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text,” Crandon v. United States, 494 U. S. 162, 160 (1990), and that “general declarations of policy,” whether in the text or the legislative history, will not support construction of an ambiguous criminal statute against the defendant, Hughey v. United States, 496 U. S. 411, 422 (1990). But lenity does not always require the “narrowest” construction, and our cases have recognized that a broader construction may be permissible on the basis of nontextual factors that make clear the legislative intent where it is within the fair meaning of the statutory language. See Dixson v. United States, 465 U. S. 482, 500-501, n. 19 (1984). Cf. McBoyle v. United States, 283 U. S. 25, 27 (1931) (a criminal statute should be construed in such a way that its language gives “fair warning” to the “common mind”). Whether lenity should be given the more immediate and dispositive role Justice Scalia espouses is an issue that is not raised and need not be reached in this case.

 The Sentencing Guidelines, of course, do not directly apply to juvenile-delinquency proceedings. We observe that 28 U. S. C. § 995(a)(19), also enacted as part of the Sentencing Reform Act of 1984, gives the Sentencing Commission power to “study the feasibility of developing guidelines for the disposition of juvenile delinquents.” The Government reports that the Sentencing Commission has recently begun such a study. See Brief for United States 11, n. 1.